UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KAYLYNN K., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18-cv-03061-RLY-MJD |
| ) | |
| ANDREW M. SAUL, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Kaylynn K. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3)(A) (2018). For the reasons set forth below, the Magistrate Judge recommends that the District Judge **REVERSE** and **REMAND** the decision of the Commissioner.

**I.  Background**

Claimant filed an application for SSI on June 30, 2015. Claimant alleges disability due to problems with epilepsy, organic brain disorder, anxiety, and depression. [Dkt. 8 at 3.] Claimant's claim was initially denied on October 6, 2015, and denied again on November 5, 2015, upon reconsideration. [Dkt. 5-2 at 12.] Claimant timely filed a written request for a hearing on December 1, 2015. [Dkt. 5-2 at 12.] The hearing was held on August 11, 2017, before Administrative Law Judge Kathleen Kadlec ("ALJ"). [Dkt. 5-2 at 12.] The ALJ issued a decision on November 1, 2017, again denying Claimant's application for SSI. [Dkt. 5-2 at 24.]

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Claimant's request for review of the ALJ's decision. [Dkt. 5-2 at 2-5.] Claimant now seeks judicial review of the Commissioner's decision.

## II.  Legal Standard

To be eligible for SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. p. 404, subpart P, App. 1, she is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three and cannot perform her past relevant work but she can perform certain other available work, she is not disabled. 20 C.F.R. § 416.920.  Before continuing to step four, the ALJ must assess the claimant's residual functional capacity (RFC), by evaluating "all limitations that arise from medically determinable impairments, even those that were not severe." *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009).

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2007). This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000)); *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). When a claimant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochsaka v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006). While the ALJ must base her decision on all of the relevant evidence, *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994), and must "provide some glimpse into [her] reasoning" to "build an accurate and logical bridge from the evidence to [her] conclusion," she need not "address every piece of evidence or testimony." *Dixon,* 270 F.3d at 1176.

### III. The ALJ's Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since June 30, 2015, the application date. [Dkt. 5-2 at 14.] At step two, the ALJ found that Claimant "[had] the following severe impairments: epilepsy, organic brain disorder, anxiety, and depression." [Dkt. 5-2 at 14.] However, the ALJ found that although Claimant does have

3

"severe" impairments, Claimant "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." [Dkt. 5-2 at 15.]

In making this determination, the ALJ considered all of the listings described in Appendix I of the Regulations (20 C.F.R. pt. 404, subpart P, App. 1) and paid particular attention to listings 11.02 (epilepsy), 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). The ALJ set forth the criteria for listing 11.02 and concluded that the "medical records do not document that the claimant has experienced seizures at listing 11.03 [sic] frequency." [Dkt. 5-2 at 16.] Further, the ALJ reasoned that (1) Claimant's allegation of seizures was based upon Claimant's report to doctors and (2) Claimant has not undergone any hospital treatment for seizures. [Dkt. 5-2 at 16.]

The ALJ then considered listings 12.02, 12.04, and 12.06. The ALJ determined that the "severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria . . . ." [Dkt. 5-2 at 16.] In making this decision, the ALJ reviewed the "paragraph B" criteria under each listing in section 12. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which includes: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself. A marked limitation means "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited," while an extreme limitation is "the inability to function independently, appropriately, or effectively, and on a sustained basis." [Dkt. 5-2 at 16.] Using the criteria, the ALJ found that in understanding, remembering, or applying information Claimant had a mild limitation. [Dkt. 5-2 at 16.] In interacting with others, Claimant had a moderate limitation. [Dkt. 5-2 at 16.] Next, with

4

concentrating, persisting, or maintaining pace, Claimant also had a moderate limitation. [Dkt. 5-2 at 17.] Lastly, as for adapting or managing oneself, Claimant had a mild limitation. [Dkt. 5-2 at 17.] Therefore, because Claimant's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not satisfied.

At step four, the ALJ analyzed Claimant's residual functional capacity ("RFC"). The ALJ concluded:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). She can lift/carry 20 pounds occasionally and 10 pounds frequently. She can stand for 6 hours in an 8-hour workday. She can walk for 6 hours. She can sit for 6 hours. She can push/pull as much as she can lift/carry. She cannot climb ladders, ropes, or scaffolds. She can frequently climb ramps and stairs. She cannot work at unprotected heights or with moving mechanical parts. She cannot operate a motor vehicle. She is limited to simple, routine tasks and simple work-related decisions. She is limited to occasional interaction with supervisors or coworkers. She is limited to no interaction with the public.

[Dkt. 5-2 at 17-18.]

In finding these limitations, the ALJ considered "all symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." [Dkt. 5-2 at 18.] The ALJ stated that she accommodated Claimant's impairments and associated symptoms by limiting her to work at the light exertional level with additional physical limitations. Additionally, the ALJ stated that she accommodated Claimant's organic brain disorder, anxiety, and depression by limiting her to simple, routine tasks and simple work-related decisions. She limited Claimant to occasional interaction with supervisors and coworkers and no interaction with the public.

Moreover, after considering the evidence, the ALJ found that Claimant's medically determinable impairments "could reasonably be expected to cause the alleged symptoms;

5

however, the claimant's statements about the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." [Dkt. 5-2 at 20.] The ALJ reasoned that the "evidence does not generally support the claimant's allegations." [Dkt. 5-2 at 20.]

Finally, to determine the extent to which these limitations erode the unskilled light occupational base, the ALJ asked the vocational expert ("VE") whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The VE concluded that given all of the factors, Claimant would be able to perform the requirements of representative unskilled light occupations such as (1) routing clerk (2) mail sorter and (3) retail marker. [Dkt. 5-2 at 23-24.] Consequently, the ALJ determined Claimant was not disabled.

## IV. Discussion

### A. Limitations in Concentration, Persistence or Pace

Claimant argues "the ALJ failed to properly address the limitations in concentration, persistence or pace, or fatigue associated with insomnia in the hypothetical questions to the vocational expert or in the adopted residual functional capacity, despite having found Claimant to be moderately limited in this respect." [Dkt. 8 at 4.]

The Seventh Circuit in *O'Connor-Spinner v. Astrue* stated, "[o]ur cases generally have required the ALJ to orient the VE to the totality of a claimant's limitations. Among the limitations the VE must consider are deficiencies of concentration, persistence and pace." 627 F.3d 614, 619 (7th Cir. 2010). Additionally, "limiting a hypothetical to simple, repetitive work does not necessarily address deficiencies of concentration, persistence and pace." *Id.* at 620. Indeed, the Seventh Circuit has repeatedly rejected the notion that a hypothetical confining a

6

claimant to simple, routine tasks "adequately captures" limitations in concentration, persistence, or pace. *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014); *see also DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019); *Vargas v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015).

In *Vargas v. Colvin,* the court reversed the ALJ's decision because the ALJ did not address the claimant's moderate difficulties in regard to concentration, persistence, or pace in the hypothetical posed to the VE. 794 F.3d at 814. There, the ALJ determined at steps two and three that the claimant had "moderate difficulties" with regard to concentration, persistence, or pace. *Id.* However, in the RFC determination, the ALJ concluded that the claimant could perform "light work" and was limited to "simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions." *Id.* at 812-13. The court noted that the "hypothetical posed to a VE must incorporate *all* of the claimant's limitations supported by the medical record—including moderate limitation in concentration, persistence, and pace." *Id.* at 814 (emphasis in original). Further, the court stated that limiting a claimant to "simple, routine, and repetitive tasks" is "unrelated" to the question of whether an individual with difficulties maintaining concentration, persistence, or pace can perform such work. *Id.* at 816. Therefore, the ALJ committed reversible error. *Id.* at 814.

In the present case, the ALJ concluded in step three "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation." [Dkt. 5-2 at 17.] Similar to *Vargas*, the ALJ did not take the moderate limitations into account in her hypothetical question to the VE. In step three, the ALJ further found that "while [Claimant] was noted not to appear to have problems remaining attentive to tasks at the consultative exam, the exam indicates that she may need some help with staying on task." [Dkt. 5-2 at 17.] Moreover, the ALJ

7

mentions sleep issues, Claimant using Trazadone to assist her with sleep, mood issues, and a recommendation that Claimant undergo behavioral counseling, before ultimately concluding that "[b]ecause of these difficulties, which seem more related to mood issues, the undersigned finds that the claimant has moderate limitations in this area." [Dkt. 5-2 at 17.]  However, the ALJ merely determined Claimant is limited to "simple, routine tasks and simple work-related decisions." [Dkt. 5-2 at 18.]  The ALJ never addressed Claimant's ability to complete simple tasks for sustained periods of time in the RFC assessment.

> The ALJ only asked one hypothetical question to the VE:
>
> Let's assume a hypothetical individual, the Claimant's age and education and with the past work you described. Let's assume this individual would be limited to light work, frequent ramps and stairs. No ladders, ropes or scaffolds. No work at unprotected heights and no moving mechanical parts. No operation of a motor vehicle. Limited to simple routine tasks. Judgment is limited to simple work-related decisions. Can occasionally respond to supervisors and co-workers, but not the public.

[Dkt. 5-2 at 46-47.] The vocational expert testified that "tolerance for being off task ranges between 1 and 5% of the workday, over and above the customary breaks" and "if an individual consistently misses more than one day a month, they will not be able to maintain competitive employment." [Dkt. 5-2 at 47.]  Therefore, the VE acknowledged the risk of a claimant being off task and missing work, but was not properly advised of this possibility by the ALJ in the hypothetical.  While the ALJ does not have to use the precise terminology of "concentration," "persistence," or "pace," courts will not assume that the VE is apprised of limitations unless he or she has independently reviewed the medical record.  *See Vargas*, 794 F.3d at 814.  There is no indication here that the VE reviewed Claimant's medical history our heard testimony about issues regarding concentration, persistence, or pace.

8

Consequently, the ALJ did not adequately address Claimant's moderate limitations maintaining concentration, persistence, or pace and Claimant's ability to stay on task. "The government bears the burden of proof at the fifth step and must present evidence establishing that the claimant possesses the residual functional capacity to perform work that exists in a significant quantity in the national economy." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). The failure to build an "accurate and logical bridge" between the limitations maintaining concentration, persistence, or pace and the RFC assessment and the hypothetical posed to the VE requires this Court to remand for further proceedings.

On remand, the ALJ should fully account for Claimant's ability to stay on task for sustained periods of time in the RFC assessment and in any hypotheticals posed to the vocational expert.

**B. Listing 11.02 and Application of SSR 16-3p**

Claimant raises two additional issues. Claimant argues that the ALJ erred by making a "blanket statement" in regard to listing 11.02 and therefore failed to provide any support or reasoning for determining Claimant did not meet the listing requirement. [Dkt. 8 at 4.] Claimant also argues that the ALJ's conclusion that the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence showed "little application of SSR 16-3p." [Dkt. 8 at 22.] These two issues are related because, as noted above, the ALJ based her conclusion regarding listing 11.02 on the fact that she did not credit Claimant's testimony regarding the frequency of her seizures. Claimant contends that she meets the requirements for dyscognitive seizures, listing 11.02B. [Dkt. 8 at 17.] Listing 11.02B (dyscognitive seizures) includes seizures "occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment." 20 C.F.R. pt. 404, subpart P,

9

App. 1.  The only explanation given by the ALJ for her rejection of Claimant's testimony about the frequency of her seizures is that "[t]he medical records do not document that the claimant has experienced seizures at listing 11.0[2] level frequency," her "allegations of seizures has [sic] been based upon her report to her doctors," and "[s]he has not undergone any hospital treatment for seizures."  [Dkt. 5-2 at 16.]  However, this finding by the ALJ is not based on any current medical opinion.  The state doctors who opined that Claimant's condition did not satisfy listing 11.02 did so in 2015, without the benefit of the most recent relevant evidence in which Claimant discussed her "silent seizures" and was diagnosed by her treating neurologist, Dr. McMillion, with "epilepsy with intractable epilepsy, poorly controlled."  [Dkt. 5-2 at 38-40; Dkt. 5-8 at 45.]  For example, Dr. Fife (state doctor) concluded—in 2015—that Claimant did not meet the applicable listing because "[Claimant] has had 3 [seizures] in her life . . . [the] last in 2009."  [Dkt. 5-3 at 9.]  On remand, the ALJ should obtain an updated medical opinion regarding whether Claimant's condition meets or equals listing 11.02, rather than relying on her own view of what the medical records should include (e.g. hospital treatment, objective testing).

Similarly, on remand the ALJ should reevaluate Claimant's subjective symptoms to ensure that the reasoning provided for her findings regarding the intensity, persistence, and limiting effects of Claimant's symptoms are fully supported by the record, including, if necessary, obtaining a medical opinion regarding whether Claimant's symptoms reasonably should be expected to vary over time.

## V. Conclusion

For the reasons stated above, the undersigned Magistrate Judge recommends the ALJ's decision be **REVERSED** and **REMANDED**.

**Notice Regarding Objections**

Within **fourteen days** of being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010).

Dated: 18 JUL 2019

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.